# EXHIBIT 3

```
00001
  1                         - - -
  2
  3    IN RE:                  :SUPERIOR COURT OF
       PELVIC MESH/GYNECARE    :NEW JERSEY
  4    LITIGATION              :LAW DIVISION -
                               :ATLANTIC COUNTY
  5                            :
                               :MASTER CASE 6341-10
  6                            :
                               :CASE NO. 291 CT
  7
       CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF
  8                    CONFIDENTIALITY
                           - - -
  9
                    September 12, 2012
 10
                           - - -
 11
 12            Volume I of the transcript of the
 13    Deposition of CHARLOTTE OWENS, M.D., called for
 14    Videotaped Examination in the above-captioned
 15    matter, said deposition taken pursuant to
 16    Superior Court Rules of Practice and Procedure,
 17    by and before JoRita B. Meyer, a Certified
 18    Realtime Reporter, Registered Merit Reporter,
 19    and Certified Court Reporter for the State of
 20    Georgia, at the offices of Troutman Sanders,
 21    600 Peachtree Street Northeast, Atlanta,
 22    Georgia, commencing at 9:39 a.m.
 23                        - - -
 24             GOLKOW TECHNOLOGIES, INC.
           877.370.3377 ph|917.951.5672 fax
 25              deps@golkow.com
```

```
00141
  1             A.   I don't --
  2                  MR. BROWN:  Objection.
  3        BY MR. SLATER:
  4             Q.   Let me -- let me ask you --
  5             A.   What I'm --
  6             Q.   Dr. Owens?
  7             A.   What I'm saying is --
  8             Q.   Dr. Owens?
  9             A.   Yes?
 10             Q.   On January 13, 2005, when you saw the
 11        warning that Axel Arnaud proposed, you agreed
 12        with him that that warning should be included
 13        in the IFU, correct?
 14             A.   I do not know if I agreed or
 15        disagreed.
 16             Q.   You don't recall?
 17             A.   I don't recall.
 18             Q.   Looking at the warning that Axel
 19        Arnaud proposed, the statements made in that
 20        proposed warning are accurate statements,
 21        correct?
 22             A.   The statements in here are his
 23        initial idea about what he would like to have
 24        in the IFU.
 25             Q.   You agree that that statement in that
```

```
00142
   1    proposed warning is an accurate description of
   2    a potential set of risks to a patient getting a
   3    PROLIFT put in her body, correct?
   4         A.   I believe --
   5         Q.   Axel Arnaud is correct, right?
   6         A.   I believe that this description is
   7    what he believed on January 11.
   8         Q.   And you would agree with me -- I'm
   9    not asking about -- rephrase.
  10              And you agree that that description
  11    of potential risks to patients getting PROLIFTs
  12    is accurate, correct?
  13         A.   Is it complete?  No.
  14              Is it potentially accurate?
  15    Potentially, yes.
  16         Q.   Well, it's true that early clinical
  17    experience with the use of Gynemesh through the
  18    TVM technique -- because the PROLIFT didn't
  19    exist yet, correct?
  20         A.   Yes.
  21         Q.   That the early clinical experience
  22    showed that the use of the mesh, the Gynemesh,
  23    through the TVM approach that was developed by
  24    the French surgeons can occasionally/uncommonly
  25    lead to complications such as vaginal erosion,
```

```
00143
 1     correct?  That's a true statement?
 2          A.   Yes.
 3          Q.   Can lead to retraction, correct?
 4          A.   Yes.
 5          Q.   The -- the retraction can result in
 6     an anatomical distortion of the vaginal cavity,
 7     correct?
 8          A.   Yes.
 9          Q.   The anatomical distortion -- well,
10     rephrase.
11               The retraction, which can result in
12     an anatomical distortion of the vaginal cavity,
13     which can interfere with sexual intercourse,
14     that's a correct statement, right?
15          A.   It can, but it doesn't always, yes.
16          Q.   And it's true that clinical data at
17     that time suggested the risk of such a
18     complication is increased in the case of
19     associated hysterectomy, correct?
20          A.   Yes.
21          Q.   And it was true from the perspective
22     of Medical Affairs within Ethicon and Gynecare
23     that these risks, that you just confirmed are
24     really risks with the PROLIFT, must be taken
25     into consideration when the procedure is
```

```
00144
  1    planned in a sexually active woman, correct?
  2         A.   I would say you have to take this
  3    into consideration with any woman.
  4         Q.   Okay.  But for a sexually active
  5    woman, if vaginal erosion and retraction caused
  6    anatomical distortion of the vaginal cavity, or
  7    other problems with the vagina that would
  8    interfere with sexual -- sexual function, that
  9    would be most concerning to a woman who is
 10    actually sexually active --
 11              MR. BROWN:  Objection.
 12    BY MR. SLATER:
 13         Q.   -- as opposed to a woman who is not
 14    sexually active, correct?
 15              MR. BROWN:  Objection.
 16              THE WITNESS:  I'm not sure we can
 17         say that just because a woman is not
 18         sexually active, that defects to her
 19         vagina would be acceptable, no.
 20    BY MR. SLATER:
 21         Q.   It would have a strong -- it would
 22    have more of an impact on the quality of life
 23    for a sexually active woman than a woman who's
 24    not sexually active, correct?
 25         A.   It depends on what you're referring
```

```
00145
 1    to.
 2         Q.   I'm referring to these complications
 3    described in this warning.
 4         A.   I think --
 5         Q.   If a woman is sexually active, that
 6    can -- that would have a significant impact on
 7    her quality of life, right?
 8         A.   It would have an impact on her sexual
 9    life.  But a woman who is not sexually active
10    who has an erosion still has a significant
11    impact on her life.
12         Q.   Okay.  You knew when the PROLIFT was
13    launched that if a woman was sexually active
14    and the PROLIFT was put into her body and she
15    developed vaginal erosions and retractions,
16    that that could interfere or even make it --
17    interfere with or make it impossible for that
18    woman to have enjoyable, comfortable sexual
19    relations?  That was one of the known risks,
20    correct?
21         A.   That is one of the risks that we
22    expected her surgeon to inform her of, because
23    it's not just with PROLIFT, it is also with any
24    pelvic floor repair surgery.
25              MR. SLATER:  Move to strike.
```

```
00146
 1    BY MR. SLATER:
 2         Q.   With regard to the PROLIFT, one of
 3    the risks was that if a sexually active woman
 4    developed erosion or retraction of the mesh,
 5    that that could make it very difficult and in
 6    some cases impossible for the woman to have
 7    enjoyable sexual relations due to pain and
 8    discomfort, correct?
 9         A.   We were aware that that --
10         Q.   Is that a true statement?
11         A.   We were aware that that is an
12    uncommon potential, yes.
13         Q.   Is my statement a true statement?  Is
14    the answer yes, that that was a risk you knew?
15         A.   That is a risk that we knew.
16         Q.   Let me ask you something from your
17    perspective in Medical Affairs, as the
18    Worldwide Medical Director.  If you thought
19    that a warning needed to be included in the
20    IFU, you wanted it to be included as soon as
21    possible, right?
22         A.   We would want it to be included, yes.
23         Q.   If, in fact, you wanted that warning
24    that Axel Arnaud proposed to be included in the
25    IFU as soon as possible, and if it was not
```

```
00147
  1    included at the time of launch only because a
  2    decision was made that they did not want to
  3    reprint IFUs, if that was what occurred, you,
  4    as Worldwide Medical Director, would be very
  5    troubled by that, correct?
  6         A.   We have no -- nothing here to suggest
  7    that that's what occurred.
  8         Q.   If that's what occurred, you would be
  9    very troubled by that, right?
 10         A.   If that occurred.  But it's not clear
 11    that occurred.
 12         Q.   I'm going to represent to you -- and
 13    during the break, if necessary, if counsel
 14    objects and says I'm not characterizing the
 15    testimony correctly, I will get the testimony
 16    and provide it to you.
 17              I'm going to represent to you that in
 18    testimony from Sean O'Bryan, he confirmed that
 19    the reason that warning was not included was
 20    because they did not want to reprint the IFUs.
 21              Okay?
 22              If that is accurate, that is of
 23    tremendous concern to you, correct?
 24              MR. BROWN:  Objection.
 25              THE WITNESS:  I would say that that
```

```
00148
  1          would -- if that is what happened, and
  2          if that is Sean O'Bryan's recollection
  3          now, seven years later, that would be
  4          concerning.
  5              But I'm not sure that that is what
  6          happened, because I have no recollection
  7          of that being the reason why it was not
  8          included that way.
  9              MR. SLATER:  Move to strike from
 10          "but" forward.
 11     BY MR. SLATER:
 12          Q.   Did you -- do you have any --
 13     rephrase.
 14              As you sit here now -- let me ask you
 15     this:  Before I showed you this e-mail, had you
 16     seen this e-mail in the last seven years --
 17          A.   In the last seven years?
 18          Q.   -- as far as your preparation for the
 19     deposition?
 20          A.   Yes.
 21          Q.   Okay.  Did you make any effort to
 22     figure out whether or not it was you who was
 23     one of the people that wanted that warning
 24     included as soon as possible in the IFU for the
 25     PROLIFT?
```