IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TERRESSA WILLAMS, <br> RUSSELL WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> ETHICON INC., and <br> JOHNSON & JOHNSON, <br><br> Defendants. | Civil Action No.: **5:20-CV-00234-MTT** |

**PLAINTIFFS' PROFFER AND BRIEF RELATED TO SUBSEQUENT REVISIONS TO PRODUCT LABELING AND WARNINGS**

**COME NOW** Plaintiffs Terressa Williams and Russell Williams and file this their Proffer and Brief Related to Subsequent Revisions to Product Labeling and Warnings, showing the following:

**I.     INTRODUCTION**

Defendants have filed a Motion in Limine No. 3 to Exclude Evidence of Subsequent Revisions to Product Labeling and Warnings, to which Plaintiffs have filed a response. (Dkt. # 169).  During the discussion about this motion at the pretrial hearing on February 23, 2022, the Court requested Plaintiffs to "be specific about the subject – or the evidence that they want to use and why." (2/23/22 Hearing Trans. at p. 18).   In response to the Court's request, Plaintiffs identify the 2009 revision to the Prolift Instructions for Use ("IFU")[1] and the 2015 revision to the

---

[1] Attached hereto as Exhibit ***"A"***.

1

Gynemesh PS IFU[2]. As discussed herein, these documents are highly relevant to this matter and are not subject to exclusion under F.R.E. 407.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The 2009 and 2015 IFU Revisions

As this Court is aware, Plaintiffs have asserted claims in this case that Prolift was defectively designed and that Ethicon failed to adequately warn physicians of the adverse reactions associated with the product. In response, Defendants have argued that the warnings on the original Prolift IFU in 2004[3] were sufficient and that physicians to whom Prolift was marketed and sold were already aware of the risks indicated. Yet, at least twice after Prolift was introduced, Defendants modified that IFUs for both Prolift and Gynemesh PS[4] to greatly expand the scope of the warnings provided. Specifically, the 2004 IFU for Prolift significantly down-played the number and severity of adverse reactions:

> "Potential adverse reactions are those typically associated with surgically implantable materials, including infection potentiation, inflammation, adhesion formation, fistula formation, erosion, extrusion and scarring that result in implant contraction." (See Ex. C, at p. 6).

The 2009 Prolift IFU moved the "Adverse Reactions" closer to the beginning of the document and now included a host of other serious complications, including "hematoma, urinary

---

[2] Attached hereto as Exhibit **"B"**.

[3] Attached hereto as Exhibit **"C"**.

[4] Gynemesh PS is the mesh that is in the Prolift. At the time of Mrs. Williams' implant in 2005, Ethicon was selling the Prolift as a line extension of the Gynemesh PS. During the 510(k) application for the Prolift +M , which uses the Ultrapro mesh, the FDA informed Ethicon that at a minimum, Ethicon should have submitted an add-to-file for the Gynemesh PS product in order to market it as the Prolift. This add-to-file was later incorporated into a 510(k) for the Prolift product. (See correspondence from FDA regarding add to file and 510(k) for the Prolift, attached hereto as Exhibit **"J"**). Thus, the Prolift was not actually cleared by the FDA until May 15, 2008. Therefore, any argument by Defendants that the Gynemesh PS is a "different" product is incorrect and unavailing.

incontinence, urinary retention/obstruction, ureteral obstruction, voiding dysfunction, pain, . . ., wound dehiscence, nerve damage, recurrent prolapse, . . . and mesh exposure." (See Ex. A, at p. 3). The 2009 Prolift IFU also warned that the product could lead to "pelvic pain or pain with intercourse." (Id.).

The 2015 Gynemesh PS IFU incorporates several changes mandated by the FDA. The first was the removal of the transvaginal use indication. Ethicon removed the transvaginal mesh indication from the Gynemesh PS IFU as a condition of keeping the product on the market without having to perform the post-market safety studies the FDA ordered on the product. (See Ex. **"K"**, May 9, 2012 letter from Mary Beth Ritchey, see also, Ex. **"L"**, July 9, 2012 letter from FDA to Brian Kanerviko). The Gynemesh PS IFU that existed in 2005 had the following indications:

> Gynecare Gynemesh PS is indicated for tissue reinforcement and long-lasting stabilization of fascial structures of the **pelvic floor** in **vaginal wall** prolapse where surgical treatment is intended, either as mechanical support or bridging material for the fascial defect. (See Ex. **"M"**, Gynemesh PS IFU, "indications")(emphasis added).

In contrast, as negotiated with the the FDA, Ethicon removed from the transvaginal indication from the 2015 Gynemesh PS IFU, and changed the indication to clearly be for abdominal placement only:

> Gynecare Gynemesh is indicated for use as a bridging material for apical vaginal and uterine prolapse where surgical treatment (**laparotomy or laparoscopic approach**) is warranted. (Ex. B, "indications")(emphasis added).

Thus, the transvaginal surgical approach for which the product was used in this case, is no longer indicated, and would be an off-label use if the surgery were performed with the same mesh today.

In addition, the 2015 Gynemesh PS IFU further enlarged the list of complications associated with same mesh used in Prolift, provided more information about the longevity of

3

such problems, and also warned about the difficulties of removal.  The Adverse Reactions section of the 2015 IFU, which now spans almost an entire page as opposed to just two sentences in the original, warns of:

> "bleeding including hemorrhage, or hematoma, urinary incontinence, urge incontinence, urinary frequency, urinary retention or obstruction, voiding dysfunction, acute and/or chronic pain, wound dehiscence, nerve damage, recurrent prolapse, inflammation, adhesion formation, fistula formation, contracture, scarring, and mesh extrusion, exposure, or erosion into the vagina or other structures or organs." (Ex. B at p. 3).

This revised IFU also states that a "foreign body response" may occur which could result "in extrusion, erosion, exposure, fistula formation and/or inflammation." (Id.).  In addition, this revised IFU informed physicians that the product could result in "pelvic pain or pain with intercourse, which in some patients may not resolve."  The 2015 IFU includes a warning that "[n]euromuscular problems, including acute and/or chronic pain the groin, thigh, leg, pelvic and/or abdominal area may occur." (Id.). Such complications could require "one or more revision surgeries" and if the mesh needed to be removed, "significant dissection may be required." (Id. at p. 4).  Finally, the 2015 IFU contains a warning that the mesh could cause seroma (sub-cutaneious fluid build-up), atypical vaginal discharge, "pain or discomfort to the patient's partner during intercourse" and death. (Id.).  In short, the differences between the warnings in the original 2004 IFU and subsequent revisions for Prolift and Gynemesh PS are dramatic.

      B.      <u>The Relevancy of the 2009 and 2015 IFU Revisions</u>

Under Georgia law, "[i]n failure to warn cases, the duty to warn arises whenever the manufacturer ***knows or reasonably should know*** of the danger arising from the use of its product."  <u>Chrysler Corp. v. Batten</u>, 264 Ga. 723, 724 (1994) (emphasis added).  At the time that Prolift was launched in 2005, Ethicon was aware from "clinical experience"

and "clinical data" that the product could cause "vaginal erosion and retraction which can result in an anatomical distortion of the vaginal cavity that can interfere with sexual intercourse." (See 1/11/05 Email from A. Arnaud to O. Berthier, attached hereto as Exhibit **"D"**). Yet, Ethicon chose not to include this warning in the 2004 IFU because it did not want to spend the money to re-print the IFU, and deferred adding this warning until the "next-rev" of the IFU. (Id.)

As Plaintiffs contend, and the evidence will show, Defendants placed Prolift on the market without adequate testing. Testing and studies related to Prolift and the Gyemesh PS material that occurred after Mrs. Williams' implantation in October 2005 readily revealed a wide spectrum of problems and complications with Defendants' product, which were then incorporated (involuntarily) by Defendants in subsequent IFUs. Had Defendants properly tested and studied Prolift and Gynemesh PS prior to sale, the same severe and chronic that were discovered shortly thereafter would have been known by Defendants previously.

Furthermore, Defendants contend that the warnings contained in the initial 2004 Prolift IFU were sufficient, that physicians (such as Dr. Heaton) were already generally aware of such complications, and that no additional warnings were necessary. While Dr. Heaton may have generally been aware of the down-played risks in the initial Prolift IFU, he was not aware of other, more severe and chronic complications – complications that would later make their way into the 2009 and 2015 IFU revisions. Dr. Heaton has testified that he would have been very interested to know about such issues, would have passed that information on to Mrs. Williams, and would have looked into a different method to treat her condition. (See Heaton Depo., attached hereto as Exhibit **"E"**, at pp. 104-107). Defendants' broader argument that physicians as a group were already aware

5

of the complications of Prolift is also contradicted by the fact that Defendants amended their IFUs to add to, and elaborate upon, the list of problems caused by mesh.

        C.      <u>The 2009 and 2015 IFUs Are Not Barred Under Rule 407</u>

F.R.E. 407 states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . a defect in a product or its design; or a need for a warning or instruction." Most courts that have examined this issue have ruled that it does not preclude evidence of a corrective measure that is not voluntarily initiated by the defendant. <u>See</u> generally, <u>Millennium Partners, L.P. v. Colmar Storage, LLC</u>, 494 F.3d 1293, 1302 (11th Cir. 2007) ("Rule 407 does not apply to a remedial measure that was taken without the voluntary participation of the defendant."); <u>Genesco, Inc. v. Visa U.S.A., Inc.</u>, 296 F.R.D. 559, 580 (M.D. Tenn. 2014) ("Moreover, Fed. R. Evid. 407 does not apply to involuntary remedial measures."); <u>In re Aircrash in Bali, Indonesia</u>, 871 F.2d 812, 817 (9th Cir. 1989) ("The purpose of Rule 407 is not implicated in cases involving subsequent measures in which the defendant did not voluntarily participate. Where the defendant has not voluntarily participated in the subsequent measure at issue, the admission of that measure into evidence does not 'punish' the defendant for his efforts to remedy his safety problems."); <u>Frye v. CSX Transp., Inc.</u>, 933 F.3d 591, 604 (6th Cir. 2019) ("[W]here a subsequent remedial action is compelled, not voluntary, the remedying party has not undertaken a good deed, at least not without compulsion.").

Where a remedial action is required by a governmental or regulatory body, courts have often found that evidence of such conduct does not fall within Rule 407's proscription. "We note that there is a possible exception to Rule 407 for remedial action mandated by superior governmental authority, such as a regulatory agency, because the policy goal of encouraging *voluntary* improvements for greater public safety would not necessarily be furthered by the

exclusion of such evidence." Pineda v. Ford Motor Co., 520 F.3d 237, 246 n.13 (3d Cir. 2008) (emphasis in original); see also O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990) ("An exception to Rule 407 is recognized for evidence of remedial action mandated by superior governmental authority or undertaken by a third party because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence."); SEC v. Uzzi, 2003 U.S. Dist. LEXIS 15608, at *5 (S.D. Fla. Jan. 21, 2003) (holding that revised financial documents required by SEC "were not at all voluntary, and thus, neither the intent nor the policy underlying Rule 407 support exclusion of this material."); Rozier v. Ford Motor Co., 573 F.2d 1332, 1343 (5th Cir. 1978)("Invoking this policy [behind Rule 407] to justify exclusion here is particularly inappropriate since the estimate was prepared not out of a sense of social responsibility but because the remedial measure was to be required in any event by a superior authority, the National Highway Traffic Safety Administration.").

In the context of the FDA, courts have similarly found that actions mandated by the FDA should not be considered subsequent remedial measures, even if the manufacturer complies with the FDA's request.[5] Specifically, in Kieffaber v. Ethicon, Inc., 2021 U.S. Dist. LEXIS 57605, (D. Kan. Mar. 26, 2021), the court looked at this very same issue in a Prolift case. In Kieffaber, the court held that "[D]efendants have not shown that post-implant revisions to the Prolift IFUs were sufficiently voluntary that under the letter or the spirit of Rule 407, they must be excluded. The Court therefore rejects the argument that as subsequent remedial measures,

---

[5] In their response to Defendants' motion in limine, Plaintiffs discussed the ruling in In re Yasmin & Yaz (Drospirenone) Mktg., 2011 U.S. Dist. LEXIS 147935, at *21-22 (S.D. Ill. Dec. 22, 2011), where the court found that a drug manufacturer's compliance with an FDA "while described as voluntary, it in reality is part and parcel to the enforcement mechanism of the FDA. It is no more voluntary that a party paying a judgment without the judgment creditor pursuing post-judgment relief such as a garnishment. This distinguishes the Rule 407 procedure where a party, of its own accord, seeks to eliminate a harmful situation, once it learns of its existence, in order to prevent further harm."

evidence of post-implant revisions to the IFUs must be excluded and cannot be used as substantive evidence of a product defect or defendants' negligence." Id. at *4.

In the present case, with respect to the 2009 Prolift IFU, the evidence shows that the change in the label was initiated by the FDA. In 2008, the FDA issued a letter to Ethicon in which it summarized research and study data on Prolift and requested Ethicon to "[p]lease add to your list of adverse events, the following: "hematoma, urinary incontinence, urinary retention/obstruction, void dysfunction, pain, infection, adhesions, wound dehiscence, nerve damage, recurrent prolapse, contracture, and procedure failure." (See FDA letter, attached as Exhibit **"F"** at p. 5). Almost all of the language was incorporated into the 2009 Prolift IFU.

The changes in the 2015 Gynemesh PS IFU were also prompted by a regulatory agency, not Ethicon. In February and March 2014, Ethicon received correspondence from Health Canada, including a directorate from Health Canada advising that it had received numerous adverse event reports related to Gynemesh PS. (See 3/24/14 Health Canada Directorate, attached hereto as Exhibit **"G"**). The directorate also listed numerous complications of Ethicon's mesh products and requested Ethicon to submit a new label that "contains up-to-date information on the potential complications including, but not limited to, the above-mentioned adverse events." (Id. at pp. 1-2).

As a result of Health Canada's request, Ethicon issued a revised IFU for Gynemesh in 2015 that included the items specified by Health Canada and greatly enhanced the number and severity of warnings. Ethicon's Medical Affairs Director at the time, Martin Weisberg, testified:

> Q. As a result of Ethicon's receipt of the February 18 and March 25, 2014 letters, steps began to be taken and a process went into effect that led to label changes to the global IFU for Gynemesh PS; correct?
>
> A. That's correct.

8

(Weisberg 11/12/15 Depo., attached hereto as Exhibit *"H"*, at p. 25).[6]  Mr. Weisberg further stated that before the correspondence from Health Canada in 2014, Ethicon was not in the process of amending or changing the IFU for Gynemesh and that "what we did was initiated by that message – that letter from Canada."). (Id. at pp. 22-24). A few months after receiving Health Canada's letters, Scott Jones, Johnson & Johnson's global strategic marketing executive sent out an e-mail stating that Ethicon was "in the process of updating our Instructions For Use (IFU) for all TVT products, Artisyn and Gynemesh PG *in order to comply with recent regulatory requirements.*" (See S. Jones 9/17/14 Email, attached hereto as Exhibit *"I"*) (emphasis added).

According to Mr. Weisberg, none of the changes made to the 2015 Gynemesh PS IFU were necessary:

> Q. With regard to Gynemesh PS, the information that was added to the IFU [in 2015], it's Ethicon's position none of that information was necessary; correct?
>
> A. Correct.
>
> Q. From Ethicon's perspective, the information that was added to the Gynemesh PS IFU [in 2015], none of it was necessary to enhance the safety of the use of the Gynemesh PS; correct?
>
> A. That's correct.

---

[6] See also Ex. H at p. 35:

> Q. Based upon the labeling changes requested by Health Canada, your company as a result made changes to the global product labeling for the devices at issue; correct?
>
> A. Correct.

9

(Ex. H at p. 92).[7] Thus, in addition to the fact that Ethicon did not initiate the label change in 2015, it did not even think the changes were ***remedial***.[8] Similar to the courts' rulings in In Re Yaz and Kieffaber that compliance with FDA or regulatory directives is not a voluntary corrective measure, this Court should also determine that the changes in the 2009 Prolift IFU and the 2015 Gynemesh PS IFU were not voluntary (or remedial) and therefore do not fall under Rule 407.

### III.   CONCLUSION

For the reasons stated above and in their response to Defendants' Motion in Limine No. 3, Plaintiffs respectfully request that the 2009 IFU for Prolift and the 2015 IFU for Gynemesh PS be admissible as evidence.

This 8th day March, 2022.

| | |
|---|---|
| /s/ Jeremy McKenzie | /s/ Jeffrey M. Kuntz |
| Jeremy S. McKenzie (GA Bar 436655) | Jeffrey M. Kuntz (admitted pro Hac Vice) |
| R. Paul Hart (GA Bar 333694) | Andrew N. Faes (admitted Pro Hac Vice) |
| | |
| **KARSMAN, MCKENZIE & HART** | **WAGSTAFF & CARTMELL LLP** |
| 21 W Park Ave | 4740 Grand Avenue, Suite 300 |
| Savannah, GA 31401 | Kansas City, MO 64112 |
| Tel 912-335-4977 | Telephone: (816) 701-1100 |
| Fax 912-388-2503 | Facsimile: (816) 531-2372 |

---

[7] See also Ex. H at p. 93:

> Q. If somebody were to say that the information that was added to the Gynemesh PS IFU in 2015 was added for a safety reason, you would disagree.
>
> A. I would.

[8] The fact that the changes to the Gynemesh PS IFU in 2015 are relevant to Prolift is also established by Mr. Weisberg's testimony:

> Q. The adverse reactions that are listed in the 2015 IFU for Gynemesh PS, the revised IFU, those adverse reactions would be applicable and would be accurate for the Prolift; correct?
>
> [Objection]
>
> A. Yes.

(Ex. H at p. 95).

jeremy@kmtrial.com
paul@kmtrial.com

*/s/ Christy Crowe Childers*
Christy Crowe Childers (GA Bar 142276)

**CHILDERS & MCCAIN, LLC**
577 Mulberry St., Suite 1520
Macon, GA 31210
Tel 478-238-6692
Fax 478-238-6577
Christy@ChildersMcCain.com

afaes@wcllp.com

*/s/ Sydney Redding Floyd*
Sydney Redding Floyd (GA Bar 198854)

P.O. BOX 303
Madison, GA 30650
Tel 724-8139
sydney@sydneyfloydlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing PLAINTIFFS' PROFFER AND BRIEF RELATED TO SUBSEQUENT PRODUCT LABELING AND WARNINGS has been served electronically using the CM/ECF System which will send notification of such filing to all attorneys of record.

This 8th day of March, 2022.

                                        **KARSMAN, MCKENZIE & HART**

                                        */s/ Jeremy McKenzie*
                                        Jeremy S. McKenzie (GA Bar 436655)
                                        *jeremy@kmtrial.com*

21 W Park Ave
Savannah, GA 31401
Tel 912-335-4977
Fax 912-388-2503
*Counsel for Plaintiffs*